UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

v.

ANTONIO JOHNSON, *et al.*,

                Defendants.

_____/

Case No. 13-20764

District Judge
Paul D. Borman

Magistrate Judge
David R. Grand

### REPORT AND RECOMMENDATION TO DENY PETITIONER'S MOTION UNDER § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE (ECF No. 787)

Before the court is *pro se* Petitioner Antonio Johnson's ("Johnson") Motion under § 2255 to Vacate, Set Aside, or Correct Sentence.  (ECF No. 787.)  The government filed a response (ECF No. 803), and Johnson filed a reply (ECF No. 815.)  Johnson's motion has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.**      **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Johnson's Motion under § 2255 to Vacate, Set Aside, or Correct Sentence **(ECF Nos. 787)** be **DENIED**.

**II.**     **REPORT**

    **A.**    **Background**

The Phantom Motorcycle Club ("PMC") is an "outlaw" motorcycle club that has chapters in Michigan and numerous other states, with Detroit being the "mother chapter."  (ECF No. 751, PageID.11395.)  As an outlaw motorcycle club, PMC has a hierarchical structure with the following purposes: preserving and protecting the power, territory and reputation of the club, promoting and enhancing the club and its members and associates' activities, maximizing profits,

1

and extorting money from other clubs.  (*Id.*; ECF No. 201, PageID.1664.)  Johnson was the PMC's national president during the relevant period.  (ECF No. 751, PageID.11396.)

Phantom members wore leather vests or jackets ("rags" or "colors") with a Phantom emblem on the back.  (*Id.*; PageID.11394-95; ECF No. 201, PageID.1664.)  Other outlaw and regular motorcycle clubs also have rags or colors that are distinctive to their organizations.  (*Id.*)  Rags are of significant value to the Phantoms and other motorcycle clubs, so much so that members of clubs will attempt to rob rags from other clubs to exert their dominance.  (*Id.*)  There were many allegations of criminal conduct by Johnson between 2009 and October of 2013, including that he ordered a "National Call Out" to confront members of a rival motorcycle club, stole rags from rival members at gunpoint, assaulted and made implicit threats of force against rival members, used threats of violence to intimidate rival members, ordered other PMC members to take rivals' rags, met with other PMC members to plan the murder of rival members, ordered other PMC members to murder three rival members, and plotted to murder all rival members who would be at the three deceased rivals' funerals.  (ECF No. 201, PageID.1669-72.)

      *i.*    *The Charges*

The charges in this case arise out of a series of confrontations between members of the Phantom Motorcycle Club and rival motorcycle clubs.  (ECF No. 751, PageID.11395.)  Johnson was initially indicted on October 23, 2013.  (ECF No. 10.)  The operative third superseding indictment charged Johnson with the following:

- Count One (1), RICO Conspiracy, in violation of 18 U.S.C. § 1962(d);

- Count Five (5), Assault with a Dangerous Weapon in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(3) §2;

- Count Six (6), Conspiracy to Assault with a Dangerous Weapon in Aid of Racketeering, in violation of 18 U.S.C. § 1956(a)(6);

- Count Seven (7), Use and Carry of a Firearm During, and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c);

- Count Eight (8), Conspiracy to Commit Murder in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(5); and

- Count Thirteen (13), Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1).

(ECF No. 201, PageID.1657-1685.)

ii.  *Jury Trial and Conviction*

Johnson and some of his co-defendants were tried before a jury in the Eastern District of Michigan.  The trial took place from February 3, 2015 to March 4, 2015, and the government presented two dozen or so witnesses.  (ECF Nos. 439-465.)  A significant amount of witness testimony related to Johnson's participation in PMC.  Johnson was convicted on all Counts.  (ECF No. 469.)  In its opinion upholding Johnson's convictions, the Sixth Circuit provided the following description of the salient facts:

> The charges and convictions in this case stem from a series of PMC confrontations with rival motorcycle clubs.  PMC is an "outlaw" motorcycle club that has chapters in Michigan, Ohio, and six other states.  The Detroit chapter is the "mother chapter."  PMC has a hierarchical structure, with a national president, vice-president, enforcers, and treasurer. Each chapter also has a chapter president and vice-president.  PMC has a set of by-laws, members are required to pay dues, and chapters pay money to the national treasurer.
>
> PMC places high value on being the toughest, or "baddest," outlaw motorcycle club.  One way to establish this dominance is to take the leather vests worn by members of rival clubs (known as "rags"), which are important symbols in motorcycle club culture.  This is considered the ultimate sign of disrespect.  PMC members are not allowed to let rivals take their own rags, and they must resist with force or use violence to get them back.  PMC's rival motorcycle clubs in the Detroit area include Hell Lovers and Satan's Sidekicks.
>
> Johnson served as PMC's national president from 2009 until his indictment in this case.

3

* * *

The jury heard testimony that [co-defendant Bryan] Sorrell shot Satan's Sidekick member Leon McGee after PMC president Johnson instructed PMC members to take Satan's Sidekicks' rags and that [another co-defendant] participated in the fight at a Hell Lovers' party on Johnson's orders and periodically supplied guns to other Phantoms.

* * *

There was also extensive testimony showing that PMC members raided a Hell Lovers "bridge-the-gap" party in 2013 and that president Johnson instructed members to "tear the party up, act as Phantoms." Then, in September 2013, after Sidekicks disrespected Johnson, armed PMC members went on a mission to take Sidekicks' rags by force. After spotting Sidekick Leon McGee leaving another club's clubhouse, the Phantoms attacked, and Sorrell shot McGee. The prosecution also introduced evidence of a PMC conspiracy to murder members of the rival Hell Lovers motorcycle club in retaliation for a Phantom's death, though this plan was disrupted when the ATF and FBI executed search warrants on [co-defendant Marvin] Nicholson's, Johnson's, and another Phantom's homes in October 2013.

* * *

The prosecution introduced sufficient evidence that Johnson [and certain co-defendants] were involved in a conspiracy with other Phantoms that included an agreement to commit at least two predicate acts. The evidence at trial showed that Johnson served as PMC national president beginning in 2009, ordered the confrontation in Cleveland with the Zulus in 2009, the Omens in 2010, the Satan's Sidekicks in 2013 (which led to the shooting of Leon McGee), and directed the plot to murder Hell Lovers.

* * *

In September 2013, after members of Satan's Sidekicks disrespected Johnson, Johnson instructed PMC members to take Sidekicks' rags by force. PMC members gathered at the PMC clubhouse [] and from there left to track down Sidekicks. Although the mission was to steal rags, several Phantoms, including Sorrell, were armed, and at one point Nicholson asked [government informant] Miller whether everyone was armed, and Miller responded that Brown was bringing his gun. Nicholson, Sorrell, and [co-defendant Sherman] Brown, along with other PMC members, staked out a rival's clubhouse, and when Leon McGee emerged, Sorrell and another Phantom attacked. Sorrell punched McGee, and McGee stabbed Sorrell, at which point Sorrell shot McGee.

4

Johnson, Nicholson, and Sorrell were convicted of assault with a dangerous weapon in aid of racketeering and conspiracy to assault with a dangerous weapon in aid of racketeering, or aiding and abetting those offenses, related to the shooting of Leon McGee. . . .

Johnson claims that the evidence is insufficient to sustain his VICAR conviction because he only ordered Phantoms to strip Sidekicks of their rags—not to shoot anyone.  However, a jury could conclude that Johnson's instruction "facilitat[ed] the offense's commission" and that escalation to violence was reasonably foreseeable.  *See Rosemond [v. United States,]* 134 S. Ct. at 1245, 1248.  Similarly, Nicholson attended the PMC meeting before the assault on McGee, specifically asked whether Phantoms brought guns, and was present at the scene of the shooting.  Finally, Sorrell was present at the meeting and actually shot Leon McGee.  From this evidence, a rational jury could conclude that defendants were guilty of assault with a dangerous weapon in aid of racketeering and infer a conspiracy to do the same.

All defendants except [one of Johnson's co-defendants] were convicted of conspiracy to commit murder in aid of racketeering related to the PMC plot to murder Hell Lovers.  After PMC member Steven Caldwell was murdered while riding his motorcycle in late September 2013, PMC president Johnson held a meeting in which he called for retaliation against Hell Lovers—the suspected culprits.  At the meeting—with Nicholson, Sorrell, Jackson, and Brown all in attendance—Johnson announced a plan to murder three Hell Lovers, which would cause other Hell Lovers to travel to Michigan for the funerals, at which time PMC would attack and kill a large number of them.  Nicholson dispensed orders to PMC members to carry out the first murder, and Nicholson and other PMC members began preparations.  Nicholson's and Johnson's direct involvement in the conspiracy easily meet the sufficiency standard.

* * *

Johnson, Nicholson, and Sorrell next challenge their convictions under 18 U.S.C. § 924(c) for using or carrying a firearm during and in relation to a crime of violence, or aiding and abetting that offense, related to the McGee shooting.  To be convicted of violating § 924(c) under an aiding and abetting theory, a defendant must have advance knowledge that the plan would include a firearm.  *Rosemond*, 134 S. Ct. at 1249.  This advance-knowledge requirement does not mean that a defendant must know in advance that his confederate will *actually use* the gun.  Instead, the government must show that the defendant "decided to join in the criminal venture . . . with full awareness of its scope . . . including its use of a firearm."  *United States v. Johnson*, No. 16-2063, 2017 WL 3263744, at *8 (6th Cir. Aug. 1, 2017) (quoting *Rosemond*, 134 S. Ct. at 1249).

Sorrell, Nicholson, and Johnson each argue that they did not have this requisite advance knowledge because the McGee incident was not supposed to involve a gun fight, and instead Phantoms were only supposed to steal Sidekicks' rags. We disagree. First of all, there is overwhelming evidence— including Sorrell's own statements caught on recording—that Sorrell actually shot McGee. Thus, there is no reason to even rely on aiding and abetting liability for Sorrell. Second, before the assault, Nicholson asked Miller whether other PMC members were carrying weapons, and as a result knew that at least one Phantom would be bringing his gun. Lastly, the government presented evidence at trial that prior raids ordered by Johnson included firearms and that Johnson was aware that PMC members usually carried firearms on such raids. *See United States v. Soto*, 794 F.3d 635, 662 (6th Cir. 2015). Viewing the evidence in the light most favorable to the government, a rational jury could thus conclude that Johnson knew in advance that the raid on Sidekicks would include firearms. *See Johnson*, No. 16-2063, 2017 WL 3263744, at *8. There was sufficient evidence presented at trial to sustain each defendant's § 924(c) conviction.

* * *

Johnson next argues that there is insufficient evidence to sustain his conviction of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). This conviction was based on two pistols found by ATF agents executing a search warrant on a home with which Johnson was associated. The evidence is sufficient to sustain this conviction. . . . Here, the government introduced significant circumstantial evidence linking Johnson to these guns. Prior surveillance had revealed Johnson at the home, and in executing the warrant, agents seized documents indicating that Johnson owned the home. The pistols were found in a closet that also held a Phantom vest with "President" on it. And in a recorded phone call, Johnson expressed relief that he had not been at the house at the time of the search because "they would've pulled two pistols out the house. . . . [T]hey would've had me."

(ECF No. 751, PageID.11394-408.)

iii.    *Sentencing*

At sentencing, the Honorable Paul D. Borman, who presided over Johnson's trial, sentenced him to a total of 420 months in prison, broken down as follows: Count One – 300 months; Count Five – 240 months; Count Six – 36 months; Count Eight – 120 months; and Count Thirteen – 120 months, with all of those sentences to run concurrently, and as to Count Seven –

120 months, with that sentence to run consecutively to the 300 months Johnson was sentenced to on the other Counts.  (ECF No. 638, PageID.7629.)

*iv.     Appeal and § 2255 Motion*

On September 8, 2015, Johnson unsuccessfully appealed his conviction and sentence to the United States Court of Appeals for the Sixth Circuit (ECF No. 751.)  Johnson filed a Petition for Writ of Certiorari with the U.S. Supreme Court that was denied on April 17, 2018.  (ECF No. 758.)  He then filed the instant § 2255 motion on April 10, 2019.  (ECF No. 787.)  In his instant § 2255 motion, Johnson raises three issues: (1) his trial counsel provided ineffective assistance when he failed to challenge this Court's venue; (2) his appellate counsel was ineffective by failing to raise a claim based on *Dean v. United States*, 137 S.Ct. 1170 (2017), which the United States Supreme Court decided on April 3, 2017, *after* Johnson was convicted; and (3) he is "actually innocent" of Count Seven charging him with violating 18 U.S.C. § 924(c) because the underlying predicate charges of 18 U.S.C. §§ 1959(a)(3) and (a)(6) (*i.e.*, Counts Five and Six) "do not constitute 'crimes of violence.'"[1]

**B.     Legal Standards**

Under 28 U.S.C. § 2255, a prisoner sentenced by a federal court may "move the court which imposed the sentence to vacate, set aside or correct the sentence" based on a claim "(1) 'that the sentence was imposed in violation of the Constitution or the laws of the United States;' (2) 'that the court was without jurisdiction to impose such sentence;' (3) 'that the sentence was in

---

[1] Actually, Johnson asserts as his third claim that he "is actually innocent ***of the Counts charging violations of 1959(a)(3) and 1959(a)(6)*** as they do not constitute 'crimes of violence' for the purposes of 924(c)."  (*Id.*, PageID.11571) (emphasis added.)  But Johnson's wording is inartful; it is § 924(c) that has the "crime of violence" element, so, while he could prevail on that charge by showing that the §§ 1959(a)(3) and (a)(6) charges are not "crimes of violence," that would have no impact on his guilt or innocence as to those two charges.  Accordingly, the Court will analyze Johnson's claim as a challenge to his § 924(c) conviction.

excess of the maximum authorized by law;' or (4) that the sentence 'is otherwise subject to collateral attack.'" *Hill v. United States*, 368 U.S. 424, 426-427 (1962). To prevail on a § 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which has a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005). A § 2255 petitioner seeking to set aside his sentence has the burden of establishing his case by a preponderance of the evidence. *McQueen v. U.S.*, 58 Fed. App'x 73, 76 (6th Cir. 2003).

**C.    Analysis**

*1.    Ineffective Assistance of Counsel at Trial*

Johnson's first argument is that his trial counsel was ineffective because he failed to challenge the propriety of venue in the Eastern District of Michigan, asserting simply, "All relevant actions occurred in another jurisdiction." (ECF No. 787, PageID.11568.) This argument lacks merit.

A petitioner seeking to establish ineffective assistance of counsel must satisfy the standards set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). First, he must show that his counsel's performance was deficient. *Strickland*, 466 U.S. at 687. "This requires showing that counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Counsel's performance is deficient only where it falls "below an objective standard of reasonableness." *Id.* at 687-88. Judicial scrutiny of counsel's performance "must be highly deferential." *Id.* at 689. A reviewing court should avoid second-guessing counsel and must ensure that "every effort is made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

Second, the petitioner must show that counsel's deficient performance prejudiced the defense. *Id.* at 687.  To satisfy the prejudice prong, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Johnson's argument – that his trial counsel was ineffective when he failed to challenge venue in the Eastern District of Michigan because "[a]ll relevant actions [purportedly] occurred in another jurisdiction" – fails to meet these standards.  (ECF No. 787, PageID.11568.)  Indeed, there was no legal basis for Johnson's attorney to challenge venue in the first place.

Article III of the United States Constitution requires that "[t]he Trial of all Crimes ... shall be held in the State where the said Crimes shall have been committed ...."  U.S. Const., art. III, § 2, cl. 3.  And, under the Sixth Amendment, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed ...."  U.S. Const., amend. VI.  Federal Rule of Criminal Procedure 18 provides, "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed."  Fed. R. Crim. P. 18.  Finally, the salient venue statute provides:

> (a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

18 U.S.C. § 3237(a).

With these concepts about a criminal case's proper venue in mind, the Court turns to the crimes for which Johnson was tried in the Eastern District of Michigan.  Indeed, it is well

established that the place where a crime occurred is "determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Cabrales*, 524 S. Ct. 1, 5 (1998) (internal citation omitted.)  "In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *United States v. Rodriquez-Moreno*, 526 U.S. 275, 279 (1999). As the operative indictment makes clear, the charges against Johnson relate to his involvement in the charged RICO conspiracy and related criminal acts.  Under 18 U.S.C. § 3237(a), such a charge constitutes a "continuing offense" and, thus, can be brought "in any district in which such offense was begun, continued, or completed."  *See Smith v. United States*, 568 U.S. 106, 111 (2013) (citing *United States v. Kissel*, 218 U.S. 601, 610 (1910)); *United States v. Taylor*, No. 116CR145TWTJKL13, 2019 WL 1049761, at *5 (N.D. Ga. Jan. 28, 2019).

There is no dispute that the PMC RICO enterprise was based in Detroit, and the operative indictment charged Johnson with numerous acts which took place there, including that he "held Vice Lord meetings and conducted Vice Lord business at the [PMC] clubhouse in Detroit, Michigan;" and "met with [PMC] members at their Detroit clubhouse . . . to discuss and plan the murder of members of the Hell Lovers Outlaw Motorcycle Club."  (ECF No. 201, PageID.1657, 1667, 1671; *see also* ECF No. 751, PageID.11394.)  As Detroit is within the Eastern District of Michigan, venue was clearly proper in this district.  18 U.S.C. § 3237(a); *Smith*, 568 U.S. at 111; *Taylor*, 2019 WL 1049761, at *5.  Accordingly, Johnson's trial counsel's failure to challenge venue cannot have been objectively unreasonable or prejudicial to his defense.  *Wolfe v. Westbrooks*, No. 3:14-CV-1575, 2019 WL 1242701, at *3 (M.D. Tenn. Mar. 18, 2019) ("Under *Strickland v. Washington* [], a trial attorney is not required to advance nonmeritorious defenses.");

*Moody v. United States*, 958 F.3d 485, 492 (6th Cir. 2020) ("Of course, failing to raise wholly meritless claims is neither deficient nor prejudicial.").

For the foregoing reasons, Johnson failed to show his trial counsel provided ineffective assistance by not challenging venue in the Eastern District of Michigan.

> ### 2. *Ineffective Assistance of Counsel on Appeal*

Johnson next argues that his appellate counsel was ineffective when he failed to raise a claim based on *Dean v. United States*, 137 S.Ct. 1170 (2017), which the Supreme Court decided on April 3, 2017, well *after* Johnson was sentenced. This argument lacks merit.

In *Dean*, the Supreme Court held that a sentencing court has discretion to consider the § 924(c) mandatory minimum sentence for using a firearm in connection with a violent or drug trafficking crime when determining the sentence to be imposed for the predicate offense. *Id.* at 1178. However, because *Dean* was decided after Johnson's sentencing, it is not a proper claim under Section 2255. As one federal district court recently explained, "*Dean* does not apply to a Section 2255 Motion because *Dean* cannot be applied retroactively to cases on collateral review. . . . Because *Dean* was decided after Movant was sentenced, its holding does not apply retroactively to his Section 2255 Motion." *Scott v. United States*, No. 4:18CV303 HEA, 2020 WL 4192450, at *7 (E.D. Mo. July 21, 2020) (citing *Reed v. United States*, No. 1:17-CV-181, 2018 WL 1064573, *2 (E.D. Mo. Feb. 23, 2018); *Simmons v. Terris*, No. 17–CV–11771, 2017 WL 3017536, at *2 (E.D. Mich. July 17, 2017); *In re Dockery*, No. 17–50367, 2017 WL 3080914, at * 1 (5th Cir. July 20, 2017) (denying certification because the defendant had not "made a prima facie showing that *Dean* announced a new rule of constitutional law that was made retroactive to cases on collateral review")). For this reason alone, Johnson's argument about *Dean* fails.

Moreover, even if Johnson's appellate counsel should have argued *Dean* at some point during the appellate process, Johnson fails to satisfy the *Strickland* test's prejudice prong. According to *Strickland*, Johnson must "affirmatively prove prejudice." *Strickland*, 466 U.S. at 693. But Johnson failed to mount any meaningful argument whatsoever about how he was prejudiced. His § 2255 motion does not discuss his sentence at all, let alone how it would have been impacted had the Sixth Circuit remanded his case for resentencing. Instead, Johnson simply states, in the most conclusory fashion, that had his appellate counsel raised *Dean*, it "would have resulted in a remand for resentencing." (ECF No. 787, PageID.11569.) This does not meet his burden of establishing prejudice because "if 'one is left with pure speculation on whether the outcome of ... the penalty phase could have been any different,' there is an insufficient showing of prejudice.'" *Grzesik v. Macauley*, No. 2:18-CV-11710, 2021 WL 289536, at *4 (E.D. Mich. Jan. 28, 2021) (quoting *Baze v. Parker*, 371 F.3d 310, 322 (6th Cir. 2004)). *See also United States v. Reese*, No. 16-20697, 2021 WL 51399, at *2 (E.D. Mich. Jan. 6, 2021) (petitioner failed to demonstrate "that his defense was prejudiced" because "'[g]enerally, courts have held that 'conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255.'") (quoting *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2003)).

In his reply brief, Johnson did present a somewhat more developed argument. Noting the government's position that "the sentences imposed on Counts 5, 6, 8 and 13, were intentionally structured by the court to run concurrently [] [which] certainly suggests that the Court gave due consideration to the ultimate final length of the sentence to be meted out," Johnson contends "there is nothing in the record so indicating" that Judge Borman "recognized the discretion afforded by *Dean*." (ECF No. 815, 11720.) But, a review of the sentencing transcript belies Johnson's contention and shows no likelihood that, even after *Dean*, Judge Borman would have sentenced

Johnson to a lesser sentence.  Judge Borman did note his discretion to depart below the sentencing guidelines if he believed doing so was appropriate in light of all of the applicable evidence and sentencing factors, but also made clear that a very stiff sentence was warranted due to Johnson's specific role in the violent conspiracy and the need to protect the public from his further criminal conduct:

> THE COURT: The guidelines are advisory, and the Court, in arriving at the range -- or the sentence, I should say, must consult the factors contained in 18 U.S.C. Section 3553(a) in imposing a sentence that's sufficient but not greater than necessary to comply with paragraph 2 of the provision.
>
> The nature and circumstances of the offenses of conviction are very serious, very, very serious.  We're talking about a conspiracy to murder.  We're talking about also the matter concerning the shooting of Mr. McGee.
>
> The history and characteristics of the Defendant, as Mr. Rataj pointed out, there were the two incidents of the convictions.  The other history, based on the testimony during the trial, I think clearly indicated that Mr. Johnson was the head of the Phantoms.
>
> There's a need for the sentence to reflect seriousness of the offenses, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct and at this point to protect the public from further crimes of the Defendant.
>
> The Court then, pursuant to the Sentencing Reform Act of 1984, with regard to counts of conviction 1, 5, 6, 7, 8 and 13 commits the Defendant to the custody of the Bureau of Prisons for a term of 300 months or 25 years in Count 1, I'm -- hold up.  Yes, 300 months or 25 years in Count 1.  On Count 2, 240 months concurrent.  On Count 6, 36 months concurrent.  Count 7 requires a consecutive sentence of 10 years or 120 months to all other counts.  Count 8, 120 months concurrent.  Count 13, 120 months concurrent.  What this adds up to is a sentence total of 35 years incarceration.

(ECF No. 707, PageID.9382-83.)

For the foregoing reasons, Johnson failed to show his appellate counsel provided ineffective assistance when he did not raise a claim based on *Dean*.

13

       3.    *Count Seven*

The final argument raised by Johnson in his § 2255 motion is that he is "actually innocent" of Count Seven, which charged him with violating 18 U.S.C. § 924(c), because the underlying predicate charges of 18 U.S.C. §§ 1959(a)(3) and (a)(6) (*i.e.*, Counts Five and Six) "do not constitute 'crimes of violence.'" (ECF No. 787, PageID.11571.)  In support of this argument, Johnson asserts, "[a]lthough [§] 1953(a)(3) and [§] 1959(a)(6) constitutes [sic] predicates under [§] 924(c), that is so under the residual clause.  They do not constitute crimes of violence for purposes of [§] 924(c).  The sentences on those counts are illegal per se and violate due process under the Fifth Amendment." (*Id.*)  Johnson's arguments lack merit.

In Count Seven, Johnson was charged with Use and Carry of a Firearm During, and in Relation to, a Crime of Violence, in violation of 18 U.S.C. § 924(c).  (ECF No. 201, PageID.1680.) Section 924(c) provides in relevant part:

> . . . any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—
>
> (i) be sentenced to a term of imprisonment of not less than 5 years;
>
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>
> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

18 U.S.C. § 924(c)(1)(A)(i-iii).

As Johnson recognizes, Count Seven relates to the shooting of McGee, with the predicate offenses being the violations of § 1959(a)(3) and § 1959(a)(6) (Counts Five and Six).  Thus, the

Court must examine the underlying "predicate offenses" to the § 924(c) charge against Johnson to determine whether they constitute "crimes of violence."

The term "crime of violence" is defined, for purposes of § 924(c), as a felony that:

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3)(A), (B).

These two clauses in § 924(c) have been coined the "elements clause" (§ 924(c)(3)(A)) and the "residual clause" (§ 924(c)(3)(B)).  In *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019), the U.S. Supreme Court held that the residual clause is unconstitutionally vague and therefore invalid; however, the elements clause remains intact.  The Court thus proceeds to analyze Johnson's arguments only under the elements clause, which requires it to apply an "elements-based categorical approach" rather than consider "the specific means by which the defendant committed the crime."  *United States v. Evans*, 848 F.3d 242, 245-46 (4th Cir. 2017); *United States v. Fuertes*, 805 F.3d 485, 498 (4th Cir. 2015).

Both of the crimes underlying Johnson's § 924(c) charge qualify as crimes of violence under § 924(c)(3)(A)'s force clause.  In Count Five, Johnson was charged with Assault with a Dangerous Weapon in Aid of Racketeering, in violation of 18 U.S.C. §§ 1959(a)(3); 2.  (ECF No. 201, PageID.1678.)  That charge of the indictment specifically alleges that Johnson (and the other co-defendants) "did, for the purpose of maintaining and increasing position in the Phantoms, an enterprise engaged in racketeering activity, knowingly and unlawfully assault L.M. with a dangerous weapon; in violation of Michigan Compiled Laws, Sections 750.82 and 767.39." (*Id.*, PageID.1678-79.)  In Count Six, Johnson was charged with Conspiracy to Assault with a

Dangerous Weapon in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(6).  (*Id.*, PageID.1679.)  As to that charge, the indictment alleges that Johnson (and his co-defendants) "did, for the purpose of maintaining and increasing position in the Phantoms, an enterprise engaged in racketeering activity, knowingly and unlawfully conspire to assault members of the Satan Sidekicks with a dangerous weapon, in violation of Michigan Compiled Laws, Sections 750.82, 750.157a(a), and 767.39." (*Id.*, PageID.1679-80.)

Turning to the §§ 1959(a)(3), (a)(6) charges involving assault with a dangerous weapon in violation of Michigan law, the Court notes that Michigan defines assault with a dangerous weapon as an assault of "another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon without intending to commit murder or inflict great bodily harm less than murder." M.C.L. § 750.82(1). The elements are as follows: "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v. Jackson*, 487 Mich. 783, 790 (2010). It has been well established that Michigan's assault with a dangerous weapon—otherwise known as "felonious assault"— qualifies as a "crime of violence" under the elements clause, because one cannot assault a person, or jeopardize his or her life with a dangerous weapon, unless one uses, attempts to use, or threatens physical force. *See Harris v. United States*, 853 F.3d 318, 320 (6th Cir. 2017); *United States v. Walker*, 14-cr-20388, 2017 WL 131554 (E.D. Mich., Jan. 13, 2017) (holding, "[b]ecause felonious assault in Michigan necessarily has an element the use, attempted use, or threatened use of physical force against eh person of another, it [is] properly counted as a crime of violence, and Defendant is not entitled to resentencing.").

Thus, the predicate offenses of assault with a dangerous weapon categorically qualify as crimes of violence under 18 U.S.C. § 924(c)(3)(A), and support Johnson's conviction on Count

Seven.   Nothing about analyzing Johnson's § 924(c) conviction based on the two predicate offenses discussed above violates his Fifth Amendment due process rights.

The arguments that Johnson raises in his reply brief do not change the analysis.  (ECF No. 815, PageID.11720-23.)   First, he cites to a series of cases in which courts held that § 924(c) convictions based on Hobbs Act robberies were no longer valid in light of *Davis*, 139 S.Ct. 2319, which, again, declared 18 U.S.C. § 924(c)(3)(B) – the statute's residual clause – to be unconstitutionally vague.  The problem for Johnson, however, is that, as explained in *United States v. Ledbetter*, 929 F.3d 338 (6th Cir. 2019), a Hobbs Act robbery charge could only serve as a predicate offense under § 924(c)'s unconstitutionally vague residual clause, whereas, as explained above, the predicate offenses Johnson was convicted of are crimes of violence under § 924(c)'s *elements clause*:

> For their participation in the Cunningham home invasion and Moon murder, Harris and Robinson were also convicted of murder by firearm during a crime of violence, 18 U.S.C. § 924(c), (j)(1).   Here, the purported "crime of violence" was conspiracy to commit Hobbs Act robbery, which makes it a crime to conspire to "in any way or degree obstruct[ ], delay[ ], or affect[ ] commerce or the movement of any article or commodity in commerce, by robbery." 18 U.S.C. § 1951(a). Section 924(c)(3) defines "crime of violence" in two ways, but the parties agree that ***conspiracy to commit Hobbs Act robbery qualifies only if it meets § 924(c)(3)(B)'s residual definition***.  By that definition, a "crime of violence" is a felony offense "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." § 924(c)(3)(B).

> Harris and Robinson argue that their convictions under § 924(c) must be set aside because § 924(c)(3)(B)'s residual clause is unconstitutionally vague. The Supreme Court has now held that § 924(c)(3)(B)'s residual definition is unconstitutionally vague.   *See United States v. Davis* [].   ***Because the Government relies only on that now-invalidated clause*** to support Harris's and Robinson's convictions under § 924(c), those convictions must be set aside.

*Ledbetter*, 929 F.3d at 360–61 (emphasis added).

Again, Johnson's case is different because, whereas the predicate "crime of violence" offense in *Ledbetter* was conspiracy to commit Hobbs Act robbery, which could only qualify under subsection (c)(3)(B), here, for the reasons explained above, the predicate "crimes of violence" charges against Johnson are, in fact, categorical "crimes of violence" under § 924(c)(3)(A)'s elements clause.

Recent Sixth Circuit case law confirms that the RICO Conspiracy and Racketeering Conspiracy charges of which Johnson was convicted constitute predicate "crimes of violence" supporting a § 924(c) conviction. For example, in the analogous case of *United States v. Frazier*, 790 F. App'x 790, 791 (6th Cir.), cert. denied, 141 S. Ct. 314, 208 L. Ed. 2d 62 (2020), the Sixth Circuit explained:

> On remand, Frazier argues that his conviction under § 924(c) should be reversed because § 1959(a)(3) is not a "crime of violence" falling within § 924(c)(3)(A)'s elements clause. Our recent precedent forecloses this argument. *Manners v. United States*, No. 17-1171, 947 F.3d 377, 2020 WL 130432 (6th Cir. Jan. 13, 2020). *Manners* held that assault with a dangerous weapon in aid of racketeering under § 1959(a)(3) categorically involves the use, attempted use, or threatened use of force capable of causing physical pain or injury to another person. *Id.* at 382, at 4.

*Frazier*, 790 F. App'x at 791.

Accordingly, because the Sixth Circuit has already found that the government presented sufficient evidence at trial from which "a rational jury could conclude that defendants [including Johnson] were guilty of assault with a dangerous weapon in aid of racketeering and infer a conspiracy to do the same" (ECF No. 751, PageID.11404), Johnson's conviction of those crimes may serve as the predicate "crime of violence" necessary to support his § 924(c) conviction in Count Seven. *Frazier*, 790 F. App'x at 791.

Finally, in his reply brief, Johnson asserts, "in light of *Richardson v. United States*, __ U.S. __, No. 18-7036, 2019 WL 2493913 (U.S. June 17, 2019), this Court must consider the impact of

18

the First Step Act on the sentence imposed for the violation of § 924(c)."  (ECF No. 815, PageID.11723.)  The First Step Act amended § 924(c) to reduce the severity of stacking multiple convictions by applying the mandatory twenty-five-year sentence for each additional § 924(c) conviction only to a repeat offender who violated § 924(c) after a prior conviction under the statute became final.  FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194, § 403.  But the First Step Act has no applicability here for two reasons.  First, Johnson was only convicted of one § 924(c) charge in this case and he had no prior such convictions.  (ECF No. 707, PageID.9378-79.)  Second, the First Step Act expressly provides that it applies "to any offense that was committed before the date of enactment of this Act, *if a sentence for the offense has not been imposed as of such date of enactment*."  Pub. L. No. 115-391, § 403(b) (emphasis added).  Here, though, Judge Borman imposed Johnson's sentence in September of 2015 (ECF No. 638), more than three years before the First Step Act was enacted in December 2018, and that sentence has not been disturbed.  Therefore, the First Step Act does not apply to Johnson's sentence.  *See, e.g., United States v. Wood*, No. 212CR000271JRGDHI, 2021 WL 1134772, at *6 (E.D. Tenn. Mar. 24, 2021) ("'[T]he First Step Act,' however, 'is largely forward-looking and not retroactive, applying only where 'a sentence for the offense has not been imposed as of [the] date of enactment.''  *United States v. Wiseman*, 932 F.3d 411, 417 (6th Cir. 2019) [].  In other words, because the First Step Act's effective date is December 21, 2018, it 'cannot benefit' defendants who were 'sentenced prior to [that] effective date.'  *Wiseman*, 932 F.3d at 417.").  *See also United States v. Henry*, 983 F.3d 214 (6th Cir. 2020) (holding that the First Step Act would apply to defendants "whose cases were remanded prior to the First Step Act's enactment but who were resentenced only after its enactment," but would not apply to undisturbed sentences that were imposed prior to the Act's enactment).

19

For all of these reasons, Johnson's arguments that he is "actually innocent" of Count Seven's § 924(c) charge, or that he is entitled to any other sentencing relief as to his conviction on that Count, lack merit.

**D.     Conclusion**

For the foregoing reasons, **IT IS RECOMMENDED** that Johnson's Motion under § 2255 to Vacate, Set Aside, or Correct Sentence **(ECF Nos. 787)** be **DENIED**.

**E.     Certificate of Appealability**

When considering a § 2255 motion, this Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts.  A petitioner must obtain a certificate of appealability ("COA") before he may appeal the denial of his § 2255 motion.  28 U.S.C. § 2253(c)(1)(B).  A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  In cases like Johnson's where the petitioner's claims are rejected on their merits, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" to warrant a COA.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Here, for all of the reasons stated above, the Court finds that Johnson did not make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and cannot satisfy the *Slack* criteria.  Accordingly, the Court should deny Johnson a certificate of appealability.

Dated: April 2, 2021                                      s/David R. Grand
Ann Arbor, Michigan                                 DAVID R. GRAND
                                                                  United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1), Fed. R. Crim. P. 59(b)(2), and E.D. Mich. LR 72.1(d)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 2, 2021.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager